## Royal Ward *et al. versus* Nathan Ward, ·Executor.

D. W., the widow of E. W., waived the provisions made for her in his will, and claimed her dower; and it was assigned to her in land devised to C. M. and S. M. Whereupon the following agreement was entered into: " Articles of agreement indented &c., by and between C. M. and S. M., on one part, and the other heirs of E. W., on the other part, witnesseth, that C. M. and S. M. doth covenant and agree, that the widow D. W.'s thirds shall stand agreeable to the commissioners' return, and also further covenant and agree the widow shall receive one third part of the personal estate after the payment of debts, &c.; and we further agree, that said estate shall be settled without any further trouble on our part; and we further relinquish all claims on said estate except the last dividend. And the said heirs, who shall hereafter subscribe their names, doth hereby covenant and agree &c. to let the sum of $400 remain in the hands of C M. and S M. for a compensation for the third being set on their land, without use, until the widow's decease. To the true and faithful performance of the several covenants

Ward
v.
Ward.

and agreements aforesaid, the parties do hereby respectively bind themselves and their respective heirs, &c., each to the other, their executors, &c., in the penal sum of $4000." This indenture was executed by C. M. and S. M., but not by all the other heirs of E. W. It was *held,* that it was a *several* and not a *joint* agreement, and therefore was binding upon those heirs by whom it was executed; and that with regard to them, the Court of Probate was authorized to take notice of and conform to this agreement, in the final settlement of the account of the executor, in relation to the personal estate; but that the personal property should be distributed to those heirs who did not become parties to the agreement, in conformity with the provisions of the will.

In the same case, the executor, who was also an heir, recovered possession of certain real estate which was mortgaged to his testator, and the heirs, after ascertaining that it was not wanted to pay debts and legacies, agreed to assume the control thereof. The mortgage was subsequently foreclosed, and the executor and heirs thereupon sold the land, without obtaining a license of court, and received a distributive share of the proceeds of the sale. It was *held,* that the executor was not bound to charge himself with such proceeds in his account.

A testator devised three parcels of land to his son N. W., "by his paying the other children, towards their share of my estate, three hundred dollars," and bequeathed the residue of his estate, real and personal, to his children. Subsequently to the execution of the will, the testator, for a valuable consideration, conveyed to N. W. two of the parcels so devised. On January 21, 1818, the will was proved, and the widow having waived the provisions therein made in her favor, her dower was assigned in the third parcel, of which she took possession. The devisee N. W. received his portion of the residue of the estate, under the will, and in 1832 filed in the Court of Probate a disclaimer, under his hand and seal, of all his right and interest in the third parcel, of which he had never taken possession. It was *held,* that the devise to N. W. created a charge upon the land; that the conveyance of the two parcels of land by the testator was a revocation of the devise *pro tanto;* that N. W. did not accept the devise, although he had not disclaimed it until 1832, and although he had received his portion of the residue of the estate under the will; and that it was not necessary, that he should disclaim by deed.

BY an agreed statement of facts it appeared, that on Feb-, ary 22, 1808, Edward Ward made his will, which contained the following clauses :

" I give and bequeath unto my wife, Dorothy Ward, fifty dollars yearly and every year during her natural life, in room of her thirds, together with half the house and half the household furniture belonging thereto."

" Also, I give and bequeath unto the sons and daughters of my son, Amos Ward, two hundred and fifty dollars, to be divided as follows, viz. ; I give the sons thirty dollars, then remainder of the abovenamed sum is to be divided among all the children, equal alike at the age of twenty-one, and paid to them by my executor hereafter mentioned ; and interest paid to them yearly for their present support."

"Also, I give and bequeath unto my second son, Nathan Ward, (the appellee,) all the land lying on the east side of the road leading to Salem ; also, all the land lying on the north side of the turnpike, bounded &c. ; also, five acres on the west side of the above said road leading to Salem, &c. ; by said Nathan Ward paying the other children, towards their share of my estate, three hundred dollars ; then the above named land is to be Nathan Ward's own estate, to him, his heirs, and assigns for ever ; this I give to him as his full share of my estate ; which I consider is five hundred dollars given him."

The testator also bequeathed to Calvin Mayo and Sally, his wife, who was the daughter of the testator, certain real estate, " by Calvin Mayo paying six hundred dollars to the other children towards their portion." Several legacies were given to the other children, and the residue of the estate, real and personal, was given to the testator's children. Nathan Ward, the appellee, was appointed sole executor.

It appeared, that, on January 21, 1818, the will was proved and allowed ; that the widow of the testator waived the provisions made for her in the will, and claimed her dower, and that it was assigned to her under the authority of the Court of Probate, out of the lands devised to Mayo and his wife, and out of one of the three tracts of land devised to the appellee ; that a dispute having arisen among the heirs of the testator, in consequence of the assignment of the widow's dower, the following agreement was entered into, on October 27, 1818 :

" Articles of agreement indented &c., by and between Calvin Mayo and Sally Mayo, both of Orange, on one part, and the other heirs of Edward Ward, of Orange, deceased, on the other part, witnesseth, that the said Calvin and Sally Mayo, for the consideration hereafter mentioned, hath agreed and doth hereby covenant and agree, that the widow Dorothy Ward's thirds shall stand agreeable to the commissioners' return ; and also further covenant and agree the said widow shall receive one third part of the personal estate, after the payment of debts and cost of settling said estate ; and we do further agree to relinquish all claims for cost that has arisen or

Ward
*v.*
Ward

shall arise on our part against said estate ; and do further agree to relinquish to the other heirs our proportionable part of the sum of four hundred dollars, which shall be hereafter described ; and we further agree, that said estate shall be settled without any further trouble on our part ; and we further relinquish all claims on said estate, except the last dividend. And the said heirs, who shall hereafter subscribe their names, on their part, doth hereby covenant and agree, that the widow Dorothy Ward's thirds shall stand, agreeable to the commissioners' return ; and also do further covenant and agree, that the said widow shall receive one third part of the personal estate, after the payment of debts and cost of settling said estate ; and we do further covenant and agree to let the sum of four hundred dollars remain in the hands of the said Calvin and Sally Mayo for a compensation for the third being set on their land, without use, until the said widow's decease. To the true and faithful performance of the several covenants and agreements aforesaid, the aforesaid parties do hereby respectively bind themselves and their respective heirs, executors, and administrators, each to the other, their executors and administrators, in the penal sum of four thousand dollars And in testimony whereof," &c.

This agreement was executed by Mayo and his wife, and all the sons of the testator except Amos Ward, who was a spendthrift ; it was also executed by Oliver Ward, and James Stratton, the sons in law of the testator, but not by their wives.

After the execution of this agreement the appellee paid to the widow, in pursuance thereof, the sums of $300 and $142·63, which he considered to be one third part of the personal property of the testator, after the payment of debts and the charges of administration.

It also appeared, that the appellee took the note of Calvin Mayo for the sum of $400, which sum, by virtue of the agreement, was to remain in the hands of Mayo without interest until the decease of the widow, who was still alive ; and that the appellee had not charged himself with, or accounted for, that sum ; that after the widow of the testator had waived the provisions made for her in the will, and

claimed her dower, the appellee, by order of the then judge of probate, paid to her the sum of $100, and credited himself with that sum in his account ; and that the appellee paid to Moses Smith the sum of $5·23, and to Oliver Ward, the sum of $3·42, on accounts barred by the statute of limitations, and credited himself therewith in his account.

It further appeared, that the testator, on May 6, 1817, after the execution of the will, for a valuable consideration, conveyed to the appellee two of the tracts of land conditionally devised to him in the will ; that the appellee had never been in possession of the third tract devised to him, it having been assigned to the widow as a part of her dower ; that the appellee did not disclaim that tract until September 8. 1832, when he filed a disclaimer, under his hand and seal, in the Court of Probate ; and that he has taken property under the will as a residuary legatee.

On June 30, 1819, or thereabouts, the executor recovered seisin of a farm known by the name of the Allen farm, in an action on a mortgage given by James Allen to the testator, and was put in possession thereof under a writ of possession.

On November 10, 1821, the heirs had a meeting for the purpose of settling the estate, and small sums, of about $16·32, were paid to them by the appellee, in pursuance of the agreement, as the last dividend. This was understood to operate as a final settlement of the estate. At the same time it was ascertained that the Allen farm was not wanted, either to pay the debts of the estate, or the specific legacies ; in consequence of which, the heirs agreed to take possession of the farm and of the personal property connected with it, and did accordingly take possession and assume the control thereof, as of their own property. On April 23, 1823, the mortgage having been foreclosed, Royal Ward, to whom four of the heirs had conveyed all their right and title in the farm, attempted to convey it, jointly with the appellee and Mayo, to John Burbeck, Mayo conveying one eighth in his own right and one eighth in the right of his ward, Amos Ward. No license to sell the real estate of the testator, was obtained by the appellee ; but the heirs all received a distributive share of the proceeds of the sale. There were **on**

Ward
v.
Ward.

the farm, at the time of the conveyance, several articles of personal property, valued at the sum of $52·50, which were sold with the farm to Burbeck.

On June 21, 1831, the appellee rendered his account of administration ; and on February 6, 1833, a decree was made by the judge of probate in relation thereto, from which Royal Ward, one of the sons of the testator, and Calvin Mayo, appealed, and filed the following reasons of appeal :

1. Because the judge of probate decreed, that the agreement between the widow or Calvin Mayo and his wife and the heirs of the testator, was valid as against the other heirs and legatees, excepting Amos Ward, and that it was not binding on him. Whereas the appellants allege, that it was not binding on any of the heirs or legatees.

2. Because the judge decreed, that the Allen farm was reduced to money by the sale, that the proceeds of the sale had been equitably and proportionably distributed among the heirs, and that the executor was not bound to charge himself with the same. Whereas the appellants allege, that the appellee now has title thereto, and ought to be charged therewith.

3. Because the judge decreed, that the appellee was not bound to account for the sum of $300, for lands conditionally devised to him by the will. Whereas the appellants allege, that he ought to account therefor, with interest.

4. Because the judge decreed, that two charges of the appellee in his account, for money paid to the widow, amounting to the sum of $442·63, by virtue of the agreement, should be allowed, he charging himself with Amos Ward's portion thereof. Whereas the appellants allege, that those charges are not valid as against them or any of the heirs.

5. Because the judge decreed, that the appellee should not charge himself with the whole sum of $400, for a debt due the estate which he suffered to remain, and has agreed shall remain, in the hands of Calvin Mayo, without interest, by virtue of the agreement, but should only charge himself with Amos Ward's proportion thereof.

6. Because the judge decreed, that the charge of the sum of $100, paid to the widow agreeably to the decree of the late judge of probate, should be allowed. Whereas the ap

pellants allege, that such payment was unauthorized, and the decree void.

7. Because the judge decreed that several items in the account by which the appellee charged the estate with the payment by him of certain debts barred by the statute of limitations, should be allowed.

8. Because the judge decreed, that all the items of charge against the estate and in favor of the appellee, should be allowed, with the exceptions in favor of Amos Ward before mentioned. Whereas every item thereof ought to have been disallowed.

It also appeared, that the judge decreed, that the executor should be held to account with the minor child of Amos Ward, for his share of the sum of $250, bequeathed to the children of Amos Ward, without interest. The appellee accordingly credited himself with this sum in his account, as " money given by will to Amos Ward's heirs, to remain in my hands until they become of twenty-one years of age." The appellants objected to the allowance of this charge.

The appellants claimed, that the appellee should charge himself in his account with the value of the Allen estate, amounting to the sum of $400, of several articles of personal property sold with that estate, amounting to the sum of $52·50, and of other personal property turned out by James Allen to satisfy costs, amounting to the sum of $20·23.

*Wells* and *Alvord*, for the appellants. This estate should have been settled in conformity with the provisions of the will, without regard to the agreement between Mayo and his wife, and some of the heirs. A Court of Probate is not authorized to take notice of any agreement *in pais*, or to try its validity ; but the parties to it must resort to a court of common law, to enforce its performance. *Proctor* v *Atkyns*, 1 Mass. R. 321 ; *Pond* v. *Pond*, 13 Mass. R. 413 ; *Procter* v. *Newhall*, 17 Mass. R. 90 ; *Osgood* v. *Breed*, 17 Mass. R. 359 ; *Stebbins* v. *Lathrop*, 4 Pick. 44. Besides, in a Court of Probate the prevailing party, in such case, has no remedy for the costs of witnesses.

The very foundation of this decree is the validity of the agreement. It was an *inchoate* agreement until signed by all

Ward
*v.*
Ward.

the heirs; and as it was not executed by some of them, it never took effect. It is evident, both from the words and from the nature of the agreement, that it was the intention of the parties, that it should not be binding until executed by all the heirs. The settlement of the estate should be uniform in regard to all the heirs. Now Amos Ward was clearly not bound by this agreement; and if it is binding on those who executed it, they must make up the deficiency in the provision for the widow, arising in consequence of his not being bound. *Bean* v. *Parker*, 17 Mass. R. 604, 605; *Sothoron* v. *Weems*, 3 Gill & Johns. 435.

The most important question in this case arises out of the devise to the appellee. Did this devise create a *charge* on the land, or a *condition?* If it created a condition, and the appellee has not paid the sum of $300, into his own hands as executor, then the condition is broken and the land vests in the heirs. But we say it was a charge on the land, and on the appellee in respect of the land. 2 Preston on Estates, 244; *Collier's case*, 6 Coke, 16; *Moor* v. *Price*, 3 Keble, 49; *Ackland* v. *Ackland*, 2 Vern. 687; *Doe* v. *Fyldes*, Cowp. 841; *Doe* v. *Holmes*, 8 T. R. 1; *Freak* v. *Lee*, 2 Levinz, 249; *Goodtitle* v. *Maddern*, 4 East, 496; *Denn* v. *Mellor*, 5 T. R. 558; *S. C.* 2 Bos. & Pul. 247; *Doe* v. *Allen*, 8 T. R. 497; *Merson* v. *Blackmore*, 2 Atk. 341; *Doe* v. *Snelling*, 5 East, 87; *Gardner* v. *Gardner*, 3 Mason, 178; *Jackson* v *Bull*, 10 Johns. R. 148.

The conveyance of two of the tracts devised to the appellee, subsequently to the execution of the will, was a revocation *pro tanto* only. *Clarke* v. *Berkeley*, 2 Vern. 720; *S. C.* 1 Equity Cas. Abr. 412, 413; 1 Rol. Abr. 617; Gouldesb. 32, *pl.* 7; *Sparrow* v. *Hardcastle*, 3 Atk. 799; *Willet* v. *Sandford*, 1 Ves. sen. 178; *Sparrow* v. *Hardcastle*, 7 T. R. 416, note; *Rider* v. *Wager*, 2 P. Wms. 328; 4 Dane's Abr. 576; 1 Powell on Devises, (ed. of 1832) 522, note.

The charge on the land was not affected by the revocation *pro tanto*. *Hooley* v. *Booth*, 1 Eq. Cas. Abr. 106; *Hills* v. *Wirley*, 2 Atk. 605; *Hooley* v. *Booth*, 2 Vern. 359.

Land devised vests in the devisee immediately upon the death of the testator, unless the devisee disclaims; and the

disclaimer must be made within a reasonable time ; otherwise, <span style="float:right">Ward<br>*v.*<br>Ward.</span> the freehold would be in abeyance.  Such a disclaimer may ɒe made by parɒl, although in early times, it was held, that it must be by record.  Here the disclaimer was not filed till after the lapse of fourteen years from the time when the will was proved.  *Butler and Baker's case,* 3 Coke, 26 ; *Bonifaut* v. *Greenfield,* Cro. Eliz. 80 ; Shep. Touchst. 285 ; *Townson* v *Tickell,* 3 Barn. & Ald. 31 ; *Doe* v. *Smyth,* 6 Barn. & Cressw. 112 ; *Stebbins* v. *Lathrop,* 4 Pick. 44 ; *Holmés* v. *Blogg,* 8 Taunt. 35 ; 2 Kent's Comm. 194, 195 ; *Kline* v. *Beebe,* 6 Connect. R. 494 ; *Jackson* v. *Richards,* 6 Cowen, 617.

The appellee, by assuming the trust of executor, and by taking his distributive proportion of the estate, accepted the devise.  If a devisee assent to a *part* of the will, he is presumed to assent to the *whole.*  1 Powell on Devises, (ed. of 1832,) 433, note ; *Anon.* Gilb. Eq. R. 15 ; Bac. Abr. *Election, E ; Cookes* v. *Hellier,* 1 Ves. sen. 234 ; *Blake* v. *Bunbury,* 1 Ves. jun. 523 ; *Blake* v. *Bunbury,* 4 Bro. C. C. 21; *Finch* v. *Finch,* 4 Bro. C. C. 38 ; *Wilson* v. *Mount,* 3 Ves. 191 ; *Moore* v. *Butler,* 2 Sch. & Lefr. 249.

*Grennell* and *Brainard,* for the appellee, to the point, that the agreement was at least binding on those by whom it was executed, cited *Adams* v. *Bean,* 12 Mass. R. 137 ; *Cutter* v. *Whittemore,* 10 Mass. R. 442 ; and to the point, that the conveyance of the two tracts by the testator to the appellee, was a revocation of the devise, either wholly, or *pro tanto,* *Duppa* v. *Mayo,* 1 Wms's Saund. 277, note ; *Beard* v. *Beard,* 3 Atk. 72 ; 4 Kent's Comm. 513, 515, 518.

PUTNAM J. delivered the opinion of the Court.  The ques- <span style="float:right">*April term*<br>1835, *in*<br>*Franklin.*</span> tion is, whether the estate of Edward Ward, deceased, shall re settled according to an agreement between the heirs, of October 27, 1818, or according to the will of the deceased. The judge of probate has conformed to the agreement.  The appeal is prosecuted by Royal Ward, one of the legatees and sons, and by Calvin Mayo, whose wife Sally Mayo was one of the daughters of the testator.  And it has been contended, that the judge ought not to have taken any notice of the agree ment or of the acts of the parties *in pais,* notwithstanding

Ward
*v.*
Ward.

they carried the same into effect immediately and have con formed to it for fourteen years.

We are referred to *Proctor v. Atkyns*, 1 Mass. R. 321, where it was decided, that the Court of Probate could not determine upon a claim set up by deed to real estate, and to *Pond v. Pond*, 13 Mass. R. 413, where the Court held, that when one of the heirs or devisees had conveyed his property, the Probate Court could not make partition. These cases manifestly differ from the case at bar. They relate to the partition of real estate, which, as the statute law then existed, was to be made by the judge of probate *among the heirs;* and it was very clear, that the jurisdiction of the judge of probate did not extend to their grantees. By the *St.* 1817, *c.* 190, provision was made, that no conveyance made by any heir or devisee, of his or their interest or estate in the lands of any testator or intestate, should take from the judge of probate his jurisdiction and authority to divide and assign the real estate of any testator or intestate among his or her heirs or devisees.

The case of *Procter v. Newhall*, 17 Mass. R. 81, merely decides, that a creditor attaching the estate, prior to the division in the Probate Court, and afterwards perfecting his title by a levy of an execution, was to be considered as a purchaser ; and that the judge of probate, in virtue of the stat ute last cited, was not ousted of his jurisdiction to make par tition.

But the question before us is in regard to the final settle ment of the account of an executor in relation to the personal estate. And concerning that matter the jurisdiction of the Probate Court has never been questioned. It would be clearly proper and lawful for the judge to allow any charges with which the parties to be charged were satisfied.

The main objection to the agreement now under consid eration, is, that it purports to be a joint and not a several contract of all the legatees or heirs, but that it was not exe cuted by some of them, and therefore was not binding upon those who did in fact execute it.

It is true that Amos Ward, one of the sons, did not sign it ; nor did Mrs. Stratton, who was a daughter of the testator

Ward
<i>v.</i>
Ward.

But her husband did. It was signed by Mayo and his wife, and by Royal Ward.

It is contended, notwithstanding, for the appellants, that it was and is of no validity, inasmuch as it has not been executed by all the heirs of the testator. That would seem to be the result, if the instrument is to be construed a joint contract; but it would be otherwise, if it may be construed to be a several agreement. The whole of it is to be taken into consideration, in order to ascertain its legal character and meaning. It commences thus; " Articles of agreement by and between Calvin Mayo and Sally Mayo, on one part, and the other heirs of Edward Ward, on the other part." And the strength of the argument for the appellants, is, that Mayo is not bound, inasmuch as all the other heirs have not executed the agreement. In another part of the agreement it is thus expressed; " and the said heirs, who shall hereafter subscribe their names, on their part, doth hereby covenant and agree," &c. And in conclusion it is thus expressed; " To the true and faithful performance &c. the parties do hereby respectively bind themselves " &c.

Now taking the whole instrument together, we think it may be legally construed to mean an agreement between Calvin Mayo and Sally, his wife, of the one part, and the other heirs of Edward Ward, who should thereafter subscribe their names to it. Were it not for that qualification, the words " and the other heirs " would mean all the other heirs of Edward Ward. But the party of the second part explain themselves, that they meant by the phrase <i>other heirs</i>, such other heirs as should subscribe the agreement. And Mayo and wife adopt that explanation, by assenting to and signing and sealing the instrument with that explanation immediately before their eyes. Those other heirs, who so subscribed, we think made a several and not a joint contract with Mayo and his wife.

It was a liberal settlement of the estate, appropriating a large sum of the personal property for the use of Mayo, to compensate him for the dower which had been legally assigned to the widow in the land devised by the will to him. They expressly agreed to relinquish all claims on the estate, excepting the last dividend. It was a just and legal appropriation of

44 *

the personal estate, and binding upon those who became parties to the same. Stratton, the husband of one of the daughters and heirs, had a legal right so to appropriate the part which came by her. And the parties now before the Court agree, that Nathan Ward, the executor and one of the heirs and subscribers, appropriated the personal estate immediately, according to the agreement.

The bare statement of the case we think is sufficient to show, that these appellants have no reason in law, and surely not in equity, to disturb that arrangement, and to call upon the appellee to refund money paid according to their direction ; paid upon the faith of their solemn stipulation, under their hands and seals, that the estate should be settled according to that agreement, without any further trouble on their part.

We proceed to examine the account, upon the ground that the agreement was and is binding upon the parties now before the Court.

One of the items of charge against the estate, to which the appellants object, is the sum of $100, paid to the widow and allowed by the late judge of probate in June 1818. If the appellants were aggrieved by that allowance, they should have appealed from the decree of the late judge of probate. By reference to the agreement, the parties thereto were to be satisfied with the balance of the account. The case finds, that the appellants, on November 10, 1821, received about $16·32, as the last dividend. We must presume that they were then fully acquainted with all the items of the account. This sum was among them. There is nothing to rebut the presumption, that the allowance was made by the late judge of probate, and paid by the executor, with the consent of the appellants.

The same remark applies to the charges of $5·23, paid to Moses Smith, and $3·42, paid to Oliver Ward. It is too late now for the appellants to object, that those debts were barred by the statute of limitations. If any such objection were ever available, it cannot be set up for the first time after an acquiescence of fourteen years. We do not think it necessary on this occasion to revise the opinion of this Court in *Emerson* v. *Thompson*, 16 Mass. R. 429.

Another item objected to, is the sum of $250, which by he will was to be divided among the children of Amos Ward, in the proportion therein stated, when they should become of age. The executor must hold it in his hands, to distribute it. We think the judge of probate decreed properly on that matter, upon the ground, that as Amos Ward did not become a party to the agreement, the personal property should be distributed in respect to him, according to the will

The two other items, amounting together to $442·63, were paid to the widow under the agreement, as one third of the personal estate. They are established for the reasons before suggested.

The claim of the appellants, that the executor should pay for the sum of $400, cash received by Calvin Mayo, is excluded according to the agreement. It was paid by the executor in the execution of it, as a satisfaction to Mayo, by reason of the assignment of the dower over the land devised to him in the will.

The last three items, amounting to $472·73, grow out of the Allen estate, which has been foreclosed on the mortgage of the testator. It having been ascertained by the heirs, that this property was not wanted to pay debts or legacies, the heirs have taken and disposed of it in their own way ; their grantee has not been disturbed. And we see no good reason that the executor shall now make a formal entry of debt and credit of that matter in the probate office.

The only remaining claim of the appellants is, that the executor should pay to the other heirs the sum of $300, which was charged on the real estate devised to him by the testator. This is a claim which has been newly made. It was not put forth at the time of the agreement ; and as *that*, amounts to a release by the appellants, of all the estate excepting the final dividend, which has been received by them, we think the appellee might well defend himself on the ground of that settlement.

Besides, it is in effect a suit against the executor for a legacy, and should be determined by the courts which have a jury. But inasmuch as the appellants have cited a great number of authorities to show that the appellee is legally liable for

that sum, we have thought it proper, under the peculiar circumstances of the case, to consider and determine, as if this were an action for the legacy, and the facts agreed by the parties had been found by a special verdict.

The testator devised to Nathan Ward (the appellee) three tracts of land, " by his paying the other children towards their share of the estate of the testator, three hundred dollars " But the devisor, after the will was made, conveyed two of the tracts of land to the devisee, for valuable consideration. Afterwards, viz. on January 21, 1818, the will was proved. The widow waived the provision made for her in the will, and claimed her dower, which was assigned to her 'over the third tract of land above mentioned, as well as over land that had been devised to Mayo and his wife. Disputes arose, and continued until October 27, 1818, when the heirs met and made the agreement to terminate them, which has been before considered. During that period the appellee made no claim to the third tract of land, conditionally devised to him, and he has never been in possession of the same ; but the widow has been and still is in possession of it. The appellee did not disclaim it, until September 8, 1832, when he filed a disclaimer in the Probate Court. But he has taken property under the will as residuary legatee. Now, upon these facts, we are of opinion, that the devise to the appellee was a charge upon the land. The authorities cited by the counsel for the appellants are abundantly sufficient to establish that point. We are also of opinion, that the conveyance by the testator to the devisee, of the two tracts of land, was a revocation *pro tanto.* The case from Rolle's Abr. 617, *pl.* 1, is expressly to that point. *Vid.* also *Freak* v. *Lee*, 2 Levinz, 249 ; 4 Dane's Abr. 576 ; *Vauber* v. *Jeffry*, 16 Vesey, 526.

But the third tract of land, which was conditionally devised, might be worth more or less than the three hundred dollars, which were charged upon it. And the devisee had his election to take the land and pay the legacy, or by refusing to accept the devise upon those terms, to enable the legatees to take their remedy against the land. If he would not take the land, the legatees might enter and take the estate so devised upon condition. Co Lit. 236 ; devise to A and

her heirs, to pay B a sum of money, adjudged a condition, and that the other may enter for condition broken. Com. Dig. *Devise, N,* 9.

Then it becomes necessary to consider, whether the devisee accepted the estate so devised upon condition. And upon the facts agreed, we are all satisfied, that he did not accept the same. It is perfectly clear, that he was not obliged to accept it. It is true, indeed, that the presumption of the law is, that the devise will be beneficial for the devisee ; but it is only a presumption. It may be rebutted by the evidence in the case ; and when it is so rebutted, " it shows that *the estate was never in him." Townson* v. *Tickell,* 3 Barn. & Ald. 31.

If, under an ignorance of his rights, the devisee had entered immediately after the probate of the will, and had claimed the land under the belief, that he should have a present fee simple instead of having it incumbered by the widow's dower, we are inclined to think it ought not to conclude him as to the fact of acceptance.

In *Wake* v. *Wake,* 1 Ves. jun. 335, it was held, that the receipt of a legacy under a will for three years, did not prevent the right of election which the widow had to take under the will or claim her dower, it being presumed that she acted without a full knowledge of the facts which would bind her. *Vid.* also, *Earl of Northumberland* v. *Earl of Aylesford,* Ambl. 540. But in the case at bar, there has been no claim, word or deed of the devisee having any tendency to prove an acceptance.

It was contended for the appellants, that it was too late to disclaim in 1832. We are of opinion, that the deed of disclaimer was not necessary. We think, that the opinion of *Holroyd* J., in *Townson* v. *Tickell,* before cited, was correct, that where the evidence shows that the devisee did not assent, " it was not necessary to disclaim in a court of record ; nor that he should be at the trouble and expense of executing a deed to show that he did not assent."

The case however finds, that the appellee has taken some benefit under the will from the residuary clause, and it is contended that he is concluded upon this point, upon the ground that having taken any benefit under the will, he thereby as

Ward
v.
Ward.

sented to all its provisions.   We are referred to 1, Powell on Devises, 433, (edit. of 1827,) in the note by Mr. Jarman. It is there said, " that he who accepts a benefit under an instrument must accept the whole, conforming to all its provisions and renouncing every right inconsistent with it."   But he immediately explains his meaning.   " If therefore (says Mr. Jarman) a testator has affected to dispose of property which is not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee taking the benefit so given to him, must make good the attempted disposition."   It will be seen at once, that this doctrine has no application to the case at bar.   Here the testator was dealing with his own property, and not with the property of the devisee.   He charged the three hundred dollars upon a particular tract of land, and not upon the whole property devised to the devisee.   The residuary clause, under which the devisee has a benefit, was given without any condition annexed to it.

" This doctrine cannot apply, where no part of the testator's property is comprised in the will, but that which he has power to dispose of."   Bac. Abr. (Gwillim's ed.) Appendix, Election.

The numerous cases, which recognise this doctrine, proceed upon the ground, that the legatee or devisee has some interest paramount to the interest of the testator, and that the legacy is intended to operate as a compensation for property belonging to the legatee or devisee, which the testator has given to another.   Then, upon equitable principles, it is considered, that the legatee or devisee shall not have the legacy or bequest and still continue to hold his property so given to another, but that he shall be put to his election, either to keep the property to which he has a paramount right and give up the benefit of the will, or vice versâ, as he shall think most for his interest ; but he shall not have both.

Frequent reference is found in the books to Gilb. Cases in Eq. 15.   It is also cited in Mr. Jarman's note, illustrating this doctrine.   A, being seised of two acres, one in fee and the other in tail, and having two sons, devised the fee simple acre to his eldest son, who was the issue in tail, and the tail acre to his youngest son.   The eldest son entered on the tail

acre, to which he had a title paramount to the will. Whereupon the youngest brought his bill against his brother, that he should enjoy the tail acre devised to him, or else have an equivalent out of the fee acre. " All election goes upon compensation. If by a will which gives A's estate to B, an estate is given to A, he may, if he will, keep his own estate. *Rich* v. *Hull*, 9 Ves. 369 ; *Whistler* v. *Webster*, 2 Ves. jun. 367. Cases upon this point may be cited without number.

But, as has been said, here the devisee had no claim paramount to the interest of the testator. He, and he alone, had the absolute right to dispose of the estate as he pleased ; to charge one tract with a sum of money, if it were accepted, and to give other property in the residuary clause or otherwise, absolutely. It would be manifestly contrary to the will, to charge the three hundred dollars upon the whole property given to the devisee, when it is expressly put upon one particular part.

Upon the whole matter, we are all of opinion, that the decree of the judge of probate be confirmed, with costs for the appellee ; and that the papers be transmitted to the Probate Court, and the estate be there settled according to this decree